UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEMETRIA WESTMORELAND,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>　　　　Defendant. | No. 2:17-cv-01922-TLN-AC<br><br><br>ORDER |

This matter is before the court on defendant the Regents' motion for a protective order regarding several topics in plaintiff's Fed. R. Civ. P. 30(b)(6) deposition notice. ECF No. 14. This discovery motion was referred to the magistrate judge pursuant to E.D. Cal. R. 302(c)(1). Plaintiff and defendants attended a hearing on February 20, 2019 at 10:00 a.m. ECF No. 15. For the reasons stated below, the Regents' motion is GRANTED in part and DENIED in part.

**I.　　Relevant Background**

This is an employment discrimination case. Plaintiff is an African American female over the age of 40 who was employed by defendant Regents of the University of California ("the Regents") as a Human Resources Analyst V Supervisor within the Radiology Department of the University of California Medical Center ("UCDMC") in Sacramento, California. ECF No. 1-1 at 6. The following facts are alleged in the complaint. Plaintiff was employed by UCDMC for

1

approximately 18 years before she was terminated. Id. at 8. For all of her years with the Regents, her overall rating was "exceeds expectations" and "exceptional" on all annual performance evaluations. Id. In February 2013 plaintiff entered the role of Human Resources Analyst V-Supervisor in the Department of Radiology, where she was the only African American employed; all but three of the managers and supervisors she advised were Caucasian. Id.

In plaintiff's position she was responsible for all human resource activities for Radiology, both in the hospital and in the School of Medicine. Id. She monitored recruitment, retention, training and development, corrective and disciplinary actions, and leaves of absences. Id. When plaintiff arrived in the Radiology Department, FMLA (the Family Medical Leave Act) was a controversial topic and plaintiff was confronted with managers and supervisors who openly frowned on employees on FMLA leave, especially those on intermittent FMLA. Id. at 10. Plaintiff immediately ensured compliance with FMLA and enforced other compliance procedures, and worked to standardize processes across the department. These efforts were met with hostility from many managers and employees. Id.

On or about May 15 and 16, 2013, Greg Davis was on an interview panel with plaintiff to consider the hiring of a person to fill a 50% radiology assistant position opened in the MRI unit. Id. at 12. Davis stated he did not want to fill the position with a female because he required someone during his shift who was strong enough to push patients at night and because males were "easier at working at night." Id. Plaintiff told Davis it was inappropriate for him to prefer a male over a female because it was gender discrimination. Id. Davis proceeded to hire Ralph Davis, a Caucasian male, for the position. Id.

When plaintiff inquired about Davis's relationship with Ralph Davis, specifically whether the two were related, Davis became agitated and an argument ensued. Id. at 12. Instead of answering the question, Davis accused plaintiff of knowing one of the other candidates, an African American female named Donisha Campbell, whom Davis was adamantly opposed to hiring. Id. at 13. Davis threatened to complain to human resources about plaintiff's relationship to Campbell; plaintiff states she had no relationship with Campbell. Id. Following this

////

2

interaction, Davis and plaintiff stopped working together and Davis became openly hostile toward plaintiff.  Id.

Plaintiff later learned that Campbell was her ex-boyfriend's half-sister.  Id.  Plaintiff informed her supervisor, who told her that it was not a problem because "we interview people we know all the time."  Id.  Plaintiffs' supervisor commented that she herself had interviewed and selected a friend's wife for a position that reported directly to her.  Id.  Several months later, plaintiff's supervisor denied plaintiff had ever informed her about the relationship with Campbell, and stated in an e-mail to the person investigating allegations against plaintiff that Greg Davis had informed her that Campbell and plaintiff knew each other.  Id.  Campbell got one of the Radiology Assistant I position.  Id. at 15.

Plaintiff was also an HR advisor to Pamela Williams, a manager in the Radiology department.  Id. at 10.  Williams repeatedly expressed her dislike for and intent to get rid of Davis and two supervisors, including David Herchberger.  Id. at 11.  Plaintiff's supervisor and Williams purposely changed the supervisors' schedules to have Herchberger leave his employment; Herchberger had recently been on FMLA leave and they no longer wanted him employed in the department.  Id.  Herchberger received a disciplinary memo from Williams because of his absences, and he believed that plaintiff was responsible for the memo.  Id.  The first letter issued contained inaccuracies, and Herchberger sent it back to Williams stating "Tell Demetria to try again."  Id.  Williams requested plaintiff's assistance in terminating employees in a manner inconsistent and/or in violation of UCDMC internal policies and/or state and federal laws, but plaintiff refused to do so.  Id.

Plaintiff is informed and believes that Herchberger and Davis were instrumental in UCDMC opening a fact-finding investigation in to plaintiff for failure to disclose her relationship with Campbell and using her position to get Campbell hired.  Id. at 15.  UCDMC's agent, Geoff Britton, then expanded the investigation into other allegations against plaintiff, which plaintiff alleges were untrue and instituted to harass and ultimately terminate her employment.  Id.

On or about May 19, 2015, plaintiff was placed on medical leave by her physician due to severe stress and anxiety caused by defendants.  Id. at 16.  Her medical leave was extended

3

through July 10, 2015.  Id.  Defendants terminated plaintiff's employment while she was on medical leave under FMLA and/or the California Medical Leave Act, on or about July 3, 2015.  Id.  Plaintiff brings claims of retaliation for engaging in a protected activity, race discrimination, defamation, retaliation in violation of the FMLA, discrimination for taking medical leave, aiding and abetting conduct forbidden by the Fair Employment and Housing Act, and intentional infliction of emotional distress.  ECF No. 1-1.

## II. Motion

The Regents seek a protective order regarding several topics specified in plaintiff's Fed. R. Civ. P. 30(b)(6) deposition notice.  ECF Nos. 10, 14.  Plaintiff opposes the motion in the parties' joint statement.  ECF No. 14.

## III. Analysis

### A. Legal Standard: Protective Orders

Under the Federal Rules of Civil Procedure, the method available to limit the breadth or use of a discovery request is a motion for a protective order under Fed. R. Civ. P. 26(c).  This rule states in relevant part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending[.] The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]

Fed. R. Civ. P. 26(c).  Options available to the court include, in part, "forbidding the disclosure or discovery; [ ] forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters."  Id.  District courts have broad discretion to determine whether a protective order is appropriate and, if so, what degree of protection is warranted.  Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984); see also Phillips ex rel. Estates of Byrd v. Gen. Motors Corp., 307 F.3d 1206, 1211–12 (9th Cir. 2002).  The party seeking to limit discovery has the burden of proving "good cause," which requires a showing "that specific prejudice or harm will result" if the protective order is not granted.  In re Roman Catholic Archbishop of Portland, 661

////

F.3d 417, 424 (9th Cir. 2011) (citing Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1130 (9th Cir. 2003) ).

  B. Legal Standard: Rule 30(b)(6) Deposition Notices

Fed. R. Civ. P. 30(b)(6) provides that,

> [i]n its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. The corporation has a duty to educate its witnesses so they are prepared to fully answer the questions posed at the deposition.

Bowoto v. ChevronTexaco Corp., 2006 WL 294799, at *1 (N.D. Cal. Feb. 7, 2006) (citing In re Vitamins Antitrust Litig., 216 F.R.D. 168, 172 (D.D.C. 2003)). A party noticing a deposition pursuant to Rule 30(b)(6) must describe with reasonable particularity the matters on which the examination is requested. Fed. R. Civ. P. 30(b)(6).

While 30(b)(6) topics cannot be vague, "the 'reasonable particularity' requirement of Rule 30(b)(6) cannot be used to limit what is asked of the designated witness at a deposition." UniRAM Technology, Inc. v. Monolithic Sys. Tech., Inc., 2007 WL 915225, at *2 (N.D. Cal. Mar. 23, 2007) (citing Detoy v. City and County of San Francisco, 196 F.R.D. 362, 366–67 (N.D. Cal. 2000)). On one hand, "a party who notices a Rule 30(b)(6) deposition should limit the scope of the matters that the witness is required to testify about to fair and reasonable parameters[, and] 'must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute.'" Luna v. Universal City Studios LLC, No. CV 12-9286 PSG (SS), 2015 WL 13655668, at *6 (C.D. Cal. Feb. 10, 2015) (quoting Prokosch v. Catalina Lighting, Inc., 193 F.R.D. 633, 638 (D. Minn. 2000)). On the other hand, "a party responding to discovery has 'an obligation to construe ... discovery requests in a reasonable manner.'" Id., quoting Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc., 244 F.R.D. 614, 618-19 (D. Colo. 2007); see also King-Hardy v. Bloomfield Board of Education,

2002 WL 32506294, *5 (D. Conn. Dec. 8, 2002) (responding party must give discovery requests a reasonable construction, rather than strain to find ambiguity). "Therefore, a 30(b)(6) topic is not objectionable to the extent that it may be reasonably construed to seek relevant information capable of being addressed in a deposition." Id.

C. Questions Subject to The Regents' Objections:

The Regents seek a protective order as to the following 30(b)(6) deposition topics:

- Topic 1(a): Defendant THE REGENTS' internal controls, rules, procedures, policies, and practices which pertain, concern, or relate to each of these matters: Complying with its obligations under the California Family Rights Act and the Family Medical Leave Act.

- Topic 1(b): Defendant THE REGENTS' internal controls, rules, procedures, policies, and practices which pertain, concern, or relate to each of these matters: Ensuring that no employee is subjected to retaliation or discrimination for filing workers' compensation claim or reporting an injury.

- Topic 1(c): Defendant THE REGENTS' internal controls, rules, procedures, policies, and practices which pertain, concern, or relate to each of these matters: Number of UCDMC employees terminated while on FMLA/CFRA from January 2008 to present.

- Topic 1(d): Defendant THE REGENTS' internal controls, rules, procedures, policies, and practices which pertain, concern, or relate to each of these matters: Copies of all corrective and disciplinary actions issued by the Radiology Department for attendance, during the time period January 2008 to present. These records are maintained by the Radiology Department and Human Resources within each employee's file.

- Topic 2(a): Any concerns or complaints of or by Defendant THE REGENTS' management or presented to THE REGENTS by any person or entity which reflect, evidence, or pertain to: Plaintiff's performance was deficient in any manner.

- Topic 2(c): Any concerns or complaints of or by Defendant THE REGENTS' management or presented to THE REGENTS by any person or entity which reflect, evidence, or pertain to: Plaintiff's attendance fell below THE REGENTS' expectations or standards.

- Topic 2(d): Any concerns or complaints of or by Defendant THE REGENTS' management or presented to THE REGENTS by any person or entity which reflect, evidence, or pertain to: (d) Plaintiff's personal life or affairs which did

6

or may have interfered with THE REGENTS' business and/or Plaintiff's job responsibilities.

- Topic 2(e): Any concerns or complaints of or by Defendant THE REGENTS' management or presented to THE REGENTS by any person or entity which reflect, evidence, or pertain to: Any alleged violations by Plaintiff of University Policy PPM 380-13, Near Relatives and Consensual Relationships.

- Topic 2(f): Any concerns or complaints of or by Defendant THE REGENTS' management or presented to THE REGENTS by any person or entity which reflect, evidence, or pertain to: Any alleged violations by Plaintiff of University Policy PPM 360-16, Conflict of Interest.

- Topic 3(a): Defendant THE REGENTS' internal controls, rules, procedures, policies, and practices which pertain, concern, or relate to each of these matters: THE REGENTS' hiring process, including screening applications, conducting interviews and checking references.

- Topic 3(b): Defendant THE REGENTS' internal controls, rules, procedures, policies, and practices which pertain, concern, or relate to each of these matters: THE REGENTS' hiring of near relative and nepotism policy.

- Topic 3(c): Defendant THE REGENTS' internal controls, rules, procedures, policies, and practices which pertain, concern, or relate to each of these matters: THE REGENTS' Code of Ethics and Professional Conduct.

- Deposition Topic 3(d): Defendant THE REGENTS' internal controls, rules, procedures, policies, and practices which pertain, concern, or relate to each of these matters: Number and names of employees that are near relatives at UCDMC; the nature of the relationship; the names of the UCDMC employee on the interview panel; the name of the UCDMC employee making the decision to hire the near relative and the name of the UCDMC employee who made the offer to the near relative.

- Topic 3(e): Defendant THE REGENTS' internal controls, rules, procedures, policies, and practices which pertain, concern, or relate to each of these matters: Any and all memos sent by or to the Chief Administrative Officer for approval to hire a near-relative UCDMC or within the Department of Radiology. Copies of these memos were maintained in the Radiology Department by Demetria Westmoreland. Duplicate copies were placed in each employee's personnel file, during the time period January 2010 through December 2015, inclusive.

- Topic 3(f): Defendant THE REGENTS' internal controls, rules, procedures, policies, and practices which pertain, concern, or relate to each of these matters: All memos within the Department of Radiology that reference, discuss or otherwise mention University Policy PPM 380-13, Near Relatives and Consensual Relationships.

- Topic 4(c): Hiring, promotion and termination of all UCDMC employees by gender, ethnic and racial origin terminated from January 2008 to the present and the reasons for their termination: The number of employees the THE REGENTS UCDMC by gender, ethnic or racial origin disciplined because of dishonesty, the type of dishonesty engaged in and the disciplined imposed on the employee.

- Topic 4(d): Hiring, promotion and termination of all UCDMC employees by gender, ethnic and racial origin terminated from January 2008 to the present and the reasons for their termination: All disciplinary actions issued for alleged violations of the following: Violence in the Workplace, Principles of Community, UCD Health System Code of Conduct, and UC Statement of Ethical Values.

- Topic 4(e): Hiring, promotion and termination of all UCDMC employees by gender, ethnic and racial origin terminated from January 2008 to the present and the reasons for their termination: The number of employees of the THE REGENTS UCDMC by gender, ethnic or racial origin disciplined for attempting to give preferential treatment to another THE REGENTS' employee in the work place; the type of preferential treatment engaged in, and the disciplined imposed by UCDMC, if any.

- Topic 4(f): Hiring, promotion and termination of all UCDMC employees by gender, ethnic and racial origin terminated from January 2008 to the present and the reasons for their termination: Employees who were subject to corrective or disciplinary action related to University Policy PPM 380-16, Conflict of Interest.

- Topic 4(g): Hiring, promotion and termination of all UCDMC employees by gender, ethnic and racial origin terminated from January 2008 to the present and the reasons for their termination: The termination of any employees of THE REGENTS UCDMC by gender, ethnic or racial origin for "attempting to give preferential treatment" to another THE REGENTS' employee.

- Topic 4(h): Hiring, promotion and termination of all UCDMC employees by gender, ethnic and racial origin terminated from January 2008 to the present and the reasons for their termination: Other disciplinary actions short of termination taken against any employees of THE REGENTS UCDMC by gender, ethnic or racial origin because of alleged dishonesty; and the type of alleged dishonesty engaged in by the employee.

- Topic 6(a): Disciplinary actions against Defendant Greg Davis.

- Topic 6(b): Number of times Defendant Greg Davis participated as a panelist in the interviewing of UCDMC prospective employees, the names of selected candidates and any relationship with Defendant from 2008 through present.

- Topic 6(c): Defendant Greg Davis' attitude towards, and behavior with, female employees at UCDMC; documented complaints against Greg Davis found

8

within the Equal Opportunity Office (EEO) and in email records with his managers.

- Topic 6(d): Documents in the possession of Margaret Browne-McManus, Radiology Nurse Manager, regarding reports from Radiology female schedulers who were subjected to hostile behavior by Greg Davis; emails exchanged among Sharon Schmitt, Pamela Williams and Demetria Westmoreland, regarding hostile and aggressive behavior by Greg Davis from 2008-present.

- Topic 6(e): Defendant Greg Davis' relationship, if any, with Ralph Davis prior to his making a job offer Topic 6(f) [erroneously labeled (e)]: All complaints made to UCDMC's Human Resources department or other entities against Defendant Greg Davis regarding his conduct with women and minority employees including, but not exclusively, complaints of harassment, hostile work environment and violence in the work place. Said complaints would be found in this personnel file maintained in the HR Department and by his direct manager / supervisor to Ralph Davis and working relationship from 2008 through present.

- Topic 6(g) [erroneously labeled (f)]: All records, electronic or otherwise maintained by the UCDMC Equal Employment Office (EEO) regarding complaints of discriminatory behavior by Greg Davis based on race, gender or other protected classes. Yolanda Henderson was former supervisor of EEO.

- Topic 7(a): Disciplinary actions taken by UCDMC against Defendant Dave Herchberger.

- Topic 7(b): Number of times Defendant Dave Herchberger participated as a panelist in the interviewing of UCMDC prospective employees, the names of selected candidates and any relationship with Defendant Dave Herchberger from 2008 through present.

- Topic 7(c): Expressions of animus by Defendant David Herchberger against Plaintiff.

- Topic 7(d): All complaints made to UCDMC's Human Resource department or other entities against Defendant David Herchberger regarding his conduct with women and minority employees including, but not exclusive, complaints of harassment, hostile work environment and violence in the workplace.

- Topic 7(e): All records and documents pertaining to allegations against Dave Herchberger regarding his attendance and alleged misuse of FMLA leave.

ECF No. 14. The Regents raise several objections to each topic, many of which overlap; each objection is discussed by topic below.

9

### a. Unlimited in Time/Scope and Technological Difficulties

The Regents object to all challenged topics, with the exception of topics 6(b), (c), (d), and (e), and 7(b), on the grounds that plaintiff has not identified a timeframe or limited the question to plaintiff's work division. See ECF No. 14 at 3-6. While the topics themselves should have been more narrowly constructed, the obvious solution is to limit each topic to the UCDMC from the period of 2008 to present, except where it is technologically impossible to provide data due to database changes. Indeed, plaintiff has indicated her willingness to agree to reasonable time and scope limitations in meet and confer conversations, including accommodations where certain documents may be technologically unavailable for the period before 2015 due to technological difficulties imposed by database changes. ECF No. 14 at 6. The finds this compromise both reasonable and practical. The Regents' motion on this point is GRANTED insofar as the Regents must produce a deponent able to testify on all topics only as to UCDMC from 2008-present and where technologically possible.

### b. Privacy Concerns of Non-Parties

The Regents object to several topics, including topics 1(d), 3(d), 4(c), 4(d), 4(f), 4(g), 6(d), 6(e), 6(f), 6(g), 7(a), 7(b), 7(c), 7(d) and 7(e), on the grounds that they implicate the privacy concerns of non-parties. ECF No. 14. This objection is not persuasive, especially where there is no indication that the parties have attempted to resolve privacy concerns by entering into a stipulated protective order, or negotiated a process by which the information could be provided without the use of any personal identifying information. California has a constitutional right to privacy set forth in Article I, Section I of the state Constitution. It is not an absolute right, but a right subject to invasion depending upon the circumstances:

> "[A] 'reasonable' expectation of privacy is an objective entitlement founded on broadly based and widely accepted community norms.... ['The protection afforded to the plaintiff's interest and his privacy must be relative to the customs of the time and place, to the occupation of the plaintiff and to the habits of his neighbors and fellow citizens.'].) ... [W]hen determining the existence (or not) of a constitutionally protected claim we must weigh the severity of each potential invasion of privacy...."

Heller v. Norcal Mutual Ins. Co., 8 Cal.4th 30, 43–44 (1994). Defendants have not cited any case law prohibiting the discovery of information in an employee's personnel file on the grounds it is privileged or protected by the right to privacy.

This is an employment discrimination case, and disciplinary actions taken within plaintiff's workplace categorized by race and gender are relevant to her case, as are employment records and disciplinary actions of her fellow employees whom she alleges were directly involved in her wrongful termination. As the party moving for a protective order, it is the Regents' responsibility to demonstrate that the questions concerning personal identifying information of non-parties cannot be produced in a reasonable manner; the Regents have not met this burden. The Regents' motion on this point is DENIED, but the parties are ORDERED to produce a stipulated protective order that addresses third party privacy concerns, including a provision for anonymizing sensitive data such as medical records, no later than 14 days from the date of this order.

### c. Already Produced Documents/Available from Other Sources

The Regents object to several topics, including 1(a), 1(b), 3(a), 3(b), 3(c), 3(f), 6(b), 6(c), 6(d), 6(e), 6(f), 6(g), 7(b), 7(c), 7(d), 7(e), on the basis that they appear to seek documents, that documents have already been produced, or that another party would be able to provide superior testimony on the matter. This argument is persuasive only insofar as plaintiffs' questions regarding institutional policies are not clearly limited to policy implementation, as plaintiff clarified at the hearing. The arguments that others may be able to testify to the same topic or that the Regents have already produced documents are not persuasive.

As the responding party, the Regents have an obligation to construe plaintiff's topics reasonably: "a 30(b)(6) topic is not objectionable to the extent that it may be reasonably construed to seek relevant information capable of being addressed in a deposition." Luna, 2015 WL 13655668, at *6. Questions that appear to seek production of documents can easily be construed to seek testimony about the specified documents. The fact that the Regents have produced documents on a topic is irrelevant to their obligation to provide testimony at a 30(b)(6) deposition. To the extent the Regents argue the questions present an undue burdensome because

they are duplicative of written discovery already conducted, the court must decline the Regents' invitation to designate itself a "mere document gatherer;" Rule 30(b)(6) depositions serve a unique purpose and "a corporation may not take the position that its documents state the company's position." Kelly v. Provident Life & Acc. Ins. Co., No. 04-cv-807-AJB BGS, 2011 WL 2448276, at *3-5 (S.D. Cal. June 20, 2011). Further, possibility that other deponents may be better equipped to testify to certain topics is not cause to strike a question as to the Regents; the Regents are still capable of providing testimony from the employer's perspective, which is what plaintiff seeks.

Accordingly, the Regents' motion on this point is GRANTED only insofar as plaintiff's questions related to the Regents' policies are subject to the scope limitations described above, and are further limited to the implementation of policies.

### d. Vague/Irrelevant/Unduly Burdensome/Disproportionate

In each objection, the Regents make some version of boilerplate argument that the question is vague, irrelevant, unduly burdensome, or disproportionate. As the responding party, the Regents have an obligation to construe plaintiff's topics reasonably: "a 30(b)(6) topic is not objectionable to the extent that it may be reasonably construed to seek relevant information capable of being addressed in a deposition." Luna, 2015 WL 13655668, at *6. Discovery requests must be "relevant to the claim or defense of any party" and "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Where employment discrimination based on race and use of leave entitlements is at issue and where there have been alleged accusations of nepotism, questions going to an employer's nepotism/use of leave policies, history of disciplinary actions against employees (by race category and in total) for nepotism/use of leave, and the employment histories of the individuals involved with the allegedly wrongful termination, are all relevant and readily subject to construction that is proportional to the case. The Regents have not satisfied their burden of establishing otherwise.

To the extent the Regents contend that data necessary to address some topics was never tracked and therefore does not exist, plaintiff may inquire at the deposition into the Regents' practices regarding the collection and retention of the information sought. The Regents'

obligation includes production of a witness who can testify regarding what data sought by plaintiffs does and does not exist.

### IV. Conclusion

The Regents' motion for a protective order (ECF No. 10) is GRANTED in part and DENIED in part as follows:

    a. The Regents' motion is GRANTED insofar as the scope of all questions is limited to the University of California Davis Medical Center and to the timespan from 2008-present, where technologically possible;

    b. The Regents' motion as to the privacy concerns of third parties is DENIED but the parties are ORDERED to produce a stipulated protective order that addresses the confidentiality of third party private information, including a provision for anonymizing sensitive data such as medical records, no later than 14 days from the date of this order; and

    c. The Regents' motion is GRANTED in part and DENIED in that plaintiff's questions related to the Regents' policies are subject to the scope limitations described above, and are further limited to the implementation of policies;

    d. The Regents' motion is DENIED insofar as the court finds questions going to the employer's policies regarding nepotism and use of leave, history of disciplinary actions against employees (by race category and in total) for nepotism and use of leave, and the employment histories of the individuals involved with the allegedly wrongful termination, to be relevant and proportional to the case. Where a question cannot be answered because the Regents do not collect and retain the requested information, the deponent shall be prepared to answer questions regarding the pertinent information collection and retention practices.

IT IS SO ORDERED.

DATED: February 25, 2019

_/s/ Allison Claire_
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE